Case No. 12-1482 Global Crossing Telecommunications, Inc. Petitioner v. Federal Communications Commission, et al. Mr. Blau for the petitioner, Ms. Flood for the respondent. Good morning, Your Honors. Good morning. Russell Blau for Global Crossing Telecommunications. May it please the Court, I'd like to reserve three minutes for rebuttal. Sure. In this case, the Federal Communications Commission interpreted its universal service contribution rules in a way that was both contrary to the plain language of the rules and applied retrospectively. Counsel, I have a question at the outset. If on, as the case went down to the, what would you call it, the administrator? The administrator, yes. The administrator had concluded you had zero liability. Will you follow with me? If that had been true, would you have standing? I think the case would be moot. No, would you have standing? I think we would have standing. How would you have standing if you had no injury? Because there were still other years outstanding that could have been audited under this new retroactive standard. That's totally expected. With respect to this issue, there would be no standing, would there? With respect to the 2004 audit, correct. There would be no standing. So doesn't that dispose of your case? Because that suggests you didn't have a final order to appeal. Well, Your Honor, I think that the procedural context here is more complicated than that. Well, I know the procedural context, but I'm cutting through it. I'm trying anyway. I understand. I'm old. I'm trying to cut through the procedural context. So if you wouldn't have had any standing, how could you, if the administrator had concluded you had no damages, no liability at all, how could you have standing at the stage that you asserted? Well, I hate to answer. How do you have final judgment? I hate to answer a hypothetical with another hypothetical. Go ahead. But let's take another carrier, not Global Crossing, who's participated in this same proceeding, and the FCC has issued this ruling that says that here's the standard. Well, you should mention that because we had that case last year, and we concluded no standing on the second part of it because it's an adjudication, and you cannot assert standing based on a rule of law that comes in an adjudication in another case. It's interesting that you would use that hypothetical. Well, this was not a pure adjudication between Global Crossing. Ah, you mean it was a cross between an adjudication and a rulemaking? In effect, yes. There ain't no such thing. Well, there was a cross between an adjudication and a declaratory ruling, which I suppose is a species of informal adjudication. You have, of course, a rulemaking going on right now, don't you? I believe it's still pending. It seems to me you have a very powerful argument with respect to the interpretation of the rule if you had a final judgment in your case. Well, you can make that argument in the ensuing rulemaking, but that won't do you very much good because they'll switch the rule, right? If what we were talking about was a new rule that was being applied prospectively, then Global Crossing wouldn't even be here. So in the filings that led to abeyance, holding the case in abeyance, I think you all suggested that you might withdraw the appeal depending on what happens in the proceedings. So isn't that a pretty good signal that what was left to be done was pretty significant? So it wasn't just a ministerial remand. There was actually some significant stuff going on in which event it wouldn't have been considered a final decision. It was significant to the outcome, certainly. It was ministerial in the sense that the administrator was very limited in what they could do on this remand. They could only mechanically apply the instructions that the FCC gave them. They're not really an independent decision-maker. But in terms of significance to the outcome, yes. Right. What? Are you done? No, go ahead. And the outcome was that the liability was reduced by over a million? Yes. Yeah. Which is my question. You could have appealed that decision to the Bureau, correct? And then from the Bureau to the Commission, right? It was a three-step process. And had you done that, gone to the Bureau and then to the FCC and then here, you wouldn't have a final order problem, correct? That's true. So why didn't you do that? My client made that decision, Your Honor, based on the outcome, and I'm not privy to that. Okay. I understand.  Yeah. No, that leads me to a separate question, which is if you had your client or you had litigated up through the administrative procedure, there was no reason for you to pay, right? There was no reason to pay, Your Honor? Yes, you didn't have to pay prior to a final FCC judgment. The FCC rule is you're supposed to pay and then dispute. That's the position. That's not a rule. That's true. But if you don't pay, then you're subject to a penalty level of interest. Sure. That's true in any case. But you were absolutely certain you were right, so they could go pound sand and you wouldn't have to pay a dime. That's certainly true if we had won in the end. As a matter of fact, I think you had a hell of a case because it is a very strained interpretation of the rule. We agree with you on that, Judge Soberman. Yeah. So I see no reason why you couldn't have gone through the process that Judge Tatel mentioned. You had no disincentive at all. We certainly had a financial disincentive if we had not succeeded in the end. There's always a risk. But you told them you'd win. Well, you didn't get a chance to give advice. If none on the panel has further questions about the finality issue, I would take a couple of minutes on the merits. Sure. Go ahead. The FCC's rules specifically said that the revenues that would be assessed for contributions were revenues from services to end users. Now, the FCC makes most of the fact in their brief about that there were exceptions to this rule, specifically for what are called de minimis contributors. In fact, the fourth reconsideration order in 1997 created that specific exception, but also said that if you were subject to it, you had to notify your underlying carrier that you were a de minimis reseller so that the underlying carrier would know to treat you as an end user. In this case, what the administrator did was turn that around, and the FCC upheld it, and said even if your reseller customer doesn't notify you that you're subject to this exemption, you still don't have a reasonable expectation that that reseller is going to make contributions to the universal service fund. In addition, in the audit, originally there were 156 customers that the administrator looked at. In fact, only 34 of those customers turned out to be exempt under one of these exemptions, either the de minimis exemption or one of the others, and that left 122 customers who were resellers and for some reason that does not appear in the record did not make contributions. It turned out on the remand that a small handful of them actually had made contributions, and the administrator reversed itself, but the point is that the vast majority of them were not subject to these exemptions. Apparently were subject to the contribution obligation and yet had not contributed. Your basic point is that the FCC's interpretation of end user is ridiculous. Yes, Your Honor. But isn't it sort of like Alice in Wonderland? Whatever we say is an end user is an end user? In effect. And if they had done that in a rulemaking and said it's going to apply prospectively, we don't have a problem with that. They can define the terms. That's right. So you may have a problem going forward because you're in a rulemaking. As long as the company has notice of it and can apply it in future years when they're collecting the contributions, they can do that. That's not going to cause them injury. The problem in this case where the FCC in effect issued a declaratory ruling about what its rules meant in the past doesn't just affect the 2000 courts. A declaratory ruling or adjudication, which was it? I think a declaratory ruling is a form of adjudication. Under APA, it's either a rulemaking or it's an order flowing from adjudication. Since this applied retrospectively, Your Honor, it must have been an adjudication. Exactly. That's your problem. But it wasn't just an adjudication of global crossing versus the administrator. That's always true of an adjudication. That applies for cross-sectional purposes to other people. That doesn't convert it into a rulemaking. But in this case, the FCC expressly combined the proceeding along with several other proceedings, including a petition for reconsideration of a previous rulemaking order. Still, in your case, it was an adjudication. I admit the FCC is a little sloppy in dealing with the interrelationship of adjudications and rulemaking. You've seen that before. But this was an adjudication. Yes, Your Honor, as to global crossing, it was an adjudication. Thank you. Are there no other questions? Anything else? No. I'll reserve the balance of my time. Thank you. Good morning. May it please the Court, Maureen Flunt for the Federal Communications Commission. I think it's clear that this Court should dismiss global crossing's petition for review. While the order on review clarified the Commission's rules and policies, it did not ultimately reach the issue of global crossing's contribution liability, if any. Therefore, it's an interlocutory order that is not appealable. I'd like to start out with global crossing's own motions in this case. If you read, for example, global crossing's Sorry. Their December 12, 2013 motion in this case says, depending on the outcome of USAC's action on remand, petitioner may determine that it will withdraw this appeal, or alternately may seek to challenge before the FCC and then this Court USAC's application of the requirements established in the order to global crossing. That demonstrates that the final order in this case was the administrator's remand order fixing global crossing's liability, and that the order on review is interlocutory. Basically, the interlocutory order or the order on review set the standard, but ultimately it was the administrator's remand order that was the final order. And global crossing's mistake in this case, which I think the panel recognizes, is that it shouldn't challenge the final order on review. Now, I want to touch on the conference group case, which Judge Silverman brought up. In the conference group, this Court made two relevant points. As you pointed out, Judge Silverman, first of all, whenever the commission in the context of an adjudication clarifies a rule, the effect of that clarification will have a prospective effect on similarly situated parties. But that does not transform the adjudication into a rulemaking. Second, as you pointed out, Judge Silverman, even though the effect of the rulemaking may affect similarly situated parties, those parties do not have Article III standing to challenge that clarification until the clarification is applied to them in the context of their own adjudication. So Mr. Blau is incorrect when he says that similarly situated parties could have challenged this order. That's not, in fact, the case, and that's the teaching of the conference group. I have a feeling he realized that. Okay. And then one other point that I wanted to make. You know, the crux of global crossing's argument here is that the order on review changed or revised our rules outside the rulemaking process. That issue was addressed in the CSX case, which we cite in our brief for the proposition that this is an interlocutory order, and the court in that case held that a party that wants to bring that type of challenge, a party that wants to challenge an interlocutory order on the ground, that the interlocutory order established a new rule outside the rulemaking process, you can only bring that challenge and the challenge in the final order. That's exactly what global crossing is here. The substance of their argument is that we changed our rules outside the rulemaking process. So, again, global crossing's fundamental mistake was not challenging the secondary matter. Excuse me. They make an argument to the effect that your interpretation of the rule was unreasonable. I actually read the rule. I mean, it seems to me you're awful lucky we don't have that case. I'll withhold judgment on that. You know, I think the commission's view is that we're strong on merits, but I think the court agrees with us that this is an interlocutory order and the court lacks jurisdiction to consider it. So if the court doesn't have any further questions, I'm happy to sit down. Do you have anything else? No. Okay. Thank you. Thank you. How much time did Mr. Blau have left? Go ahead if you'd like to use it. Your Honors, I'd just like to point out that we had a colloquy with Judge Silberman earlier about why didn't the company just stop, not pay, and wait for the process of multiple steps to run out over how many years it might take, bearing in mind that there are no time limits for the FCC to act on any of this. As I pointed out, the company would have been subject to financial penalties if it had been unsuccessful. In addition... Which financial penalties? The additional interest... But you had the money all that time, so that's a large sale. It's an above market rate. It's a penalty rate. How much above market? I don't know off the top of my head, Your Honor. But your case was so strong. But in addition, Your Honor, the FCC or the administrator... Would be mean to you. Excuse me? No, Your Honor. The FCC and the administrator have the ability to offset against other monies due to the company for the debt that they claim is owing, so they can, in effect, take the money... Well, in the long run, if you had won, you came out ahead. In the long run, if we had won... You would have $5 million or $4 million more than you otherwise have. I take your point. If there are any other questions, I'd be happy to address them otherwise. Thank you. Thank you. Case is submitted.
judges: Tatel, Srinivasan, Silberman